IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY N. HENDERSON, | ) | CASE NO. 1:08 CV 2080 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE NUGENT |
| v. | ) | |
| | ) | |
| MICHAEL J.ASTRUE, | ) | MAGISTRATE JUDGE McHARGH |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Kimberly N. Henderson's application for Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends the decision of the Commissioner be REVERSED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this Report and Recommendation.

**I. INTRODUCTION and PROCEDURAL HISTORY**

On October 28, 2005, Plaintiff filed an application for Disability Insurance benefits and Supplemental Security Income benefits, alleging a disability onset date of March 25, 2005 due to

medical problems that stemmed from her pregnancy, including blood clots in her leg and pleurisy (Tr. 52, 73).  Born on May 21, 1970, Plaintiff was 34 years old on her alleged disability onset date, 37 years old at the time of the ALJ's determination, and was at all times a "younger individual" for purposes of the Social Security regulations.  *See* 20 C.F.R. §§404.1563, 416. 963.  Plaintiff graduated from high school and has an associate's degree in medical assistance (Tr. 380).  She has past relevant work as an accounting clerk, intake worker, financial aid counselor, and an administrative assistant (Tr. 74, 402-03).

Plaintiff's applications for benefits were denied initially and upon reconsideration.  Plaintiff requested a hearing and subsequently appeared and testified before Administrative Law Judge Edmund Round (the "ALJ") (Tr. 370-412).  The ALJ determined at Step Four of the five-step sequential evaluation[1] that Plaintiff had the residual functional capacity ("RFC") to perform

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)  If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2)  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3)  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5)  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he

her past relevant sedentary work and, therefore, was not disabled (Tr. 14-24). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. On appeal, Plaintiff claims that the ALJ erred: (1) by discrediting the opinion of Plaintiff's treating physician, Dr. Kayes; and (2) in his assessment of Plaintiff's credibility.

## II. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*,

---

is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence , regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. **ANALYSIS**

### I. Whether the ALJ Failed to Give Appropriate Weight to the Opinion of Plaintiff's Treating Physician, Dr. Kayes

Plaintiff argues that the ALJ erred by rejecting the opinion of Plaintiff's treating physician, Dr. Kayes, and by failing to give good reasons for rejecting that opinion. Specifically, Plaintiff argues that the ALJ erred by failing to credit Dr. Kayes' assessment that Plaintiff could not lift more than five pounds occasionally due to her lower extremity pain – an assessment that Plaintiff claims is uncontradicted by the record and supported by the statement of examining physician, Dr. Saghafi, that Plaintiff could not carry more than her personal effects due to her low back strain and morbid obesity. Defendant argues that despite Plaintiff's claims the ALJ gave good reasons for discrediting the extreme lifting, pushing and pulling limitations

provided by Drs. Kayes and Saghafi, and that the ALJ's RFC assessment is supported by substantial evidence .

The regulations provide that the Commissioner generally must give more weight to the opinions of a claimant's treating sources than to those of non-treating sources.  20 C.F.R. § 404.1527(d)(2) provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

If a treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then the opinion is entitled to controlling weight. *Id.*  However, a treating source's opinion may be afforded little weight if the plaintiff fails to show his impairments are supported by contemporaneous, objective clinical or diagnostic findings.  *See Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. Appx. 988, 993 (6th Cir. 2007) (citing *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Indeed, medical opinions, even those of treating doctors, are not entitled to substantial weight if based on subjective complaints and not objective, clinical evidence.  *See* 20 C.F.R. §416.927(d)(2); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 538 (6th Cir. 1981); *see also Young v. Secretary of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); Social Security Ruling 99-2p .

However, if an ALJ rejects the opinion of a treating physician, he must articulate clearly "good reasons" for doing so.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.

2004); 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Specifically, if a treating source is not accorded controlling weight, the ALJ must consider the following factors in determining what weight to assign the opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(d). In *Wilson*, the ALJ's failure to give "good reasons" for discounting a treating physician's opinion regarding a plaintiff's ability to work was grounds for reversal. *Wilson*, 378 F.3d at 544.

In this case, the ALJ summarized the opinion evidence from Plaintiff's treating physician, Dr. Kayes, as follows:

> As for the opinion evidence, Dr. Kayes said in a residual functional capacity dated April 26, 2006, that [Plaintiff] could lift and carry no more than five pounds frequently and occasionally. She said that [Plaintiff] could sit no more than three hours and stand and/or walk no more than one hour in a normal workday. Dr. Kayes felt [Plaintiff] could never climb, stoop, crouch, kneel, or crawl and could only occasionally balance. She said [Plaintiff] was limited with reaching, pushing, and pulling and would be precluded from working at heights or around moving machinery. Dr. Kayes attributed these limitations to diagnoses of chronic bilateral lower extremity pain (Exhibit 8F)

(Tr. 22). The ALJ then rejected this opinion, stating:

> I considered this opinion but give it little weight because it is not at all supported by the objective evidence, particularly the MRIs and vascular studies that show only mild changes. Additionally, there is no support in the record for Dr. Kayes' limitation on [Plaintiff]'s ability to lift and carry. If she has lower extremity pain and swelling, she would not have limitations with lifting. In assessing this opinion, I considered Dr. Kayes['] lengthy treating history with Ms. Henderson, but found it to be outweighed by other factors

(Tr. 22).

As Defendant notes, Dr. Kayes lists as the medical findings in support of her opinion that Plaintiff would not be able to lift more than five pounds because of her "chronic bilateral lower extremity pain" (Tr. 211). Dr. Kayes also notes that Plaintiff's ability to push and pull would be affected by her impairments (Tr. 212). The ALJ explains in rejecting Dr. Kayes' lifting limitation, "[i]f she has lower extremity pain and swelling, she would not have any limitations with lifting" (Tr. 22). In support of her argument that this finding is not supported by the evidence, Plaintiff points to the assessment of Dr. Saghafi who indicated that Plaintiff "is able to lift and carry her personal effects" and that "[s]he is not able to push or pull objects" (Tr. 245). The ALJ appears not to have credited this portion of Dr. Saghafi's opinion. He states:

> Dr. Saghafi said [Plaintiff] could sit up to eight hours a day and could stand and walk up to four hours a day. He said she may need [an] ambulatory aid. He said [Plaintiff] could lift and carry her personal effects but could not push and pull or climb stairs. He said she could manipulate objects, operate hand and foot controlled devices and drive a car (Exhibit 15F). I gave weight to Dr. Saghafi's opinions on sitting, standing, and walking. I gave his other opinions no weight because they are not supported by the evidence or by his examination. He gives no basis for why he thinks [Plaintiff] cannot push or pull, and this opinion is inconsistent with his opinion that she is able to lift and carry her personal effects. Also, the objective tests, particularly the MRIs and vascular studies, do not support the remainder of his opinions

(Tr. 23).

In support of Defendant's argument that the ALJ gave good reasons for discounting these opinions regarding Plaintiff's ability to push, pull and lift, Defendant cites primarily to medical evidence which appears to call into question Plaintiff's assertions regarding her limitations *generally*. For instance, Dr. Navarro indicated that Plaintiff's "pain is out of proportion to physical findings," (tr. 293), and Dr. Bahntge observed "a number of maneuvers which [he] would not expect to cause pain that caused the patient to gasp" and felt that there was a

"psychogenic overlay" to Plaintiff's symptoms (tr. 208-09). However, none of the medical evidence, including the physician's findings and opinions cited by the ALJ and Defendant – with one exception[2] – directly calls into question Dr. Kayes' and Dr. Saghafi's limitations regarding lifting, pushing and pulling.

On the other hand, little, if any, other medical evidence in the record affirmatively *supports* the lifting, pushing and pulling limitations identified by Dr. Kayes and Dr. Saghafi, since no other evidence in the record – besides the state agency RFC assessment at tr. 251-58, which the ALJ also discredits – even addresses these limitations specifically. Additionally, the objective basis for these doctors' opinions, if any, is not immediately evident from their records. Thus, there is some question as to whether these limitations are "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and not based primarily on Plaintiff's subjective complaints. Dr. Kayes attributes Plaintiff's lifting limitations to her chronic lower extremity pain. Dr. Kayes does not elaborate further on the alleged cause-and-effect relationship between Plaintiff's lower extremity pain and lifting restrictions, and Dr. Kayes' reasoning on this point is not otherwise apparent from any of her other records. Similarly, Dr. Saghafi does not provide any direct reasoning for the lifting, carrying, pushing and pulling limitations contained within his assessment, other than to state that his conclusions regarding Plaintiff's limitations are "[b]ased on the history and objective physical findings" (Tr. 245).

---

[2]The exception is the state agency RFC assessment indicating that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, and was unlimited in her ability to push and pull (Tr. 252). However, the ALJ gave no weight to this opinion, explaining that "is not supported by the evidence" and "[e]vidence establishing greater limitations was not available to the Bureau at the time of this opinion" (Tr. 24).

However, "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008) (quoting *Rohrberg v. Apfel*, 26 F.Supp.2d 303, 313 (D.Mass 1998). *See also Back v. Barnhart*, 63 Fed. Appx. 254, 259 (7th Cir. 2003) (unpublished opinion) (internal citations omitted) ("Typical cases of ALJs impermissibly 'playing doctor' are when they either reject a doctor's medical conclusion without other evidence, or when they draw medical conclusions themselves about a claimant without relying on medical evidence."); *Oglesby v. Comm'r of Soc. Sec.*, 2009 WL 2243022 at *7 (S.D. Ohio 2009) (citing *Back* and finding "that the ALJ failed to provide substantial evidence to support his rejection of the treating and consultative physicians' opinions. Instead, the ALJ acted as his own medical expert in devising an RFC that is not supported by the record").

The Court finds that the ALJ erred with respect to this issue. The only opinion evidence in the record concerning Plaintiff's lifting, pushing and pulling limitations are the opinions of Dr. Kayes and Dr. Saghafi and the state agency RFC assessment. The ALJ rejected all of these opinions, which left him with no medical opinion evidence concerning Plaintiff's ability to lift, push and pull. Yet, the ALJ included limitations for all of these activities in his RFC assessment. Specifically, the ALJ found that Plaintiff could "lift, carry, push and/or pull a maximum of 10 pounds" (Tr. 18). The ALJ did not cite to any medical opinion evidence in making these findings – indeed, he could not have done so because the record contains no evidence regarding Plaintiff's lifting, pushing and pulling limitations besides that which the ALJ rejected. Accordingly, the ALJ in this case appears to have violated the second example of

"playing doctor" outlined in *Back* by "draw[ing] medical conclusions [] about [the] claimant without relying on medical evidence." Because the ALJ assigned to Plaintiff lifting, pushing and pulling limitations without relying on any other medical evidence in record, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.

**II. Whether the ALJ Erred in Finding that Plaintiff's Subjective Complaints are not Credible**

According to Plaintiff, the ALJ gave the following reasons for discounting her credibility:

1. Plaintiff reported to Dr. Zeck that she engaged in greater activities than described;

2. There is no documentation that Plaintiff was prescribed a cane;

3. Plaintiff missed ten appointments at the Far West Center, thereby indicating non-compliance with treatment;

4. There is no evidence that Plaintiff experiences difficulty concentrating; and

5. There is no medical evidence indicating that Plaintiff needs to elevate her leg.

Plaintiff argues that none of these proffered reasons for discounting her credibility is supported by the record.

An ALJ's findings regarding a claimant's credibility are entitled to great deference because the ALJ has the opportunity to observe the claimant at the hearing and the gauge the validity of his subjective complaints. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An ALJ's credibility determination therefore "should not be discarded lightly." *Varley v. Sec. of Health and Hum. Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). However, if an ALJ discounts a claimant's credibility, he must state his reasons for doing so. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The Social Security regulations set forth factors that an ALJ should consider in assessing a claimant's credibility.  These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.  20 C.F.R. §§ 404.1529(c), 416.929(c).

As stated in SSR 96-7p:

> It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

However, "[a]s a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration." *Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732 (N.D. Ohio 2005).

Although, as Plaintiff notes, some of the ALJ's proffered reasons for discounting Plaintiff's credibility are of questionable validity, many of the ALJ's other reasons are supported by the record, and much of the medical evidence the ALJ cites as part of his credibility analysis supports the ALJ's conclusion that Plaintiff's impairments are not as severe as she claims.

In discounting Plaintiff's credibility, the ALJ stated that Plaintiff "told Dr. Zeck she is able to take care of her daughter, prepare meals, get her own medication, wash dishes, bathe her daughter, and watch television" (Tr. 21).  As Plaintiff notes, this explanation omits Plaintiff's statements to Dr. Zeck that she is only able to engage in these activities when she has help or

when she is sitting down and therefore overstates to some extent the level of Plaintiff's reported activities (Tr. 220). However, the ALJ stated in the next sentence that "[h]er allegations of limited daily activities are not supported by the objective evidence that shows only mild changes" (Tr. 21). This statement seems to acknowledge that Plaintiff's reported activities, even as the ALJ describes them, are quite limited, and it notes that Plaintiff's statements regarding her activities are inconsistent with the objective medical evidence.

Plaintiff also complains that the ALJ erroneously relied on documentation that she missed ten appointments at the Far West center as evidence that she is non-compliant with treatment. However, as Plaintiff appears to acknowledge, the record in fact contains some documentation indicating that Plaintiff missed ten appointments at the Far West Center, (tr. 95), and the ALJ was entitled to rely upon this evidence in making his credibility determination. Moreover, Plaintiff does not dispute that she missed some of these appointments, (tr. 392), and she does not dispute the ALJ's mention of the fact that Plaintiff apparently was able to attend appointments with her primary care physician during the period in which she missed her Far West appointments (doc. 9, at 15-16). Plaintiff also testified that the Far West Center was close to her house (tr. 383) which to some extent negates her claim that it was difficult for her to keep her appointments there, especially when viewed in combination with her apparent ability to keep other appointments. The ALJ was entitled to rely on this evidence in making his credibility determination, although the Court notes that the ALJ's statement that Plaintiff "has been non-compliant with medical advice" is somewhat overstated (Tr. 22).

Plaintiff also complains that the ALJ erred in failing to credit portions of Dr. Zeck's report that demonstrate that she has difficulty with concentration. However, the ALJ specifically

noted that he gave great weight to the portions of Dr. Zeck's report indicating that Plaintiff was moderately limited in her abilities to relate to others; to understand, remember and follow instructions; and to *maintain concentration, persistence and pace*.  The ALJ also specifically noted that he accounted for these limitations in his RFC assessment, which restricts Plaintiff to "simple, routine, low-stress tasks that do not involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others" (Tr. 18, 23).  Plaintiff does not appear to dispute this portion of the ALJ's RFC assessment.  Thus, the Court finds little merit to Plaintiff's argument on this point.

Plaintiff also complains that the ALJ erred by failing to credit her assertion that she must elevate her leg while sitting.  However, an ALJ is not required to credit as true a claimant's subjective assertions regarding what she can and cannot do.  *See e.g., Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  Although Plaintiff asserts that "[n]ot one of the medical providers disputed her report that she had this discomfort," Plaintiff does not dispute the ALJ's notation that none of Plaintiff's physicians have told her that she must elevate her leg while sitting, and as Defendant notes, multiple tests have failed to indicate any circulatory problem in Plaintiff's legs (Tr. 178, 271, 288, 290-91, 305, 354).  The evidence also supports the ALJ's statement that Plaintiff's physicians largely have been unable to determine the cause of Plaintiff's alleged leg pain.

Plaintiff further complains that the ALJ erred in determining that Plaintiff was never prescribed a cane.  Dr. Kayes' notes reflect that she prescribed a cane and a handicap placard for Plaintiff, although the notes also reflect that Plaintiff requested these prescriptions (Tr. 281).  The Court finds that the ALJ's point-blank statement that the evidence does not show that any

doctor ever prescribed a cane for Plaintiff, when viewed against Dr. Kayes notes, is of questionable validity.

However, the ALJ also cited several other pieces of evidence from the medical record that support his credibility assessment. For instance, the ALJ cited to statements from Dr. Bahntge (a referral from Dr. Kayes) who wrote that "[i]n the course of the examination there are a number of maneuvers which I would not expect to cause pain that caused the patient to gasp" (tr. 207), that Plaintiff exhibited inconsistent effort throughout much of the exam (tr. 208), that "it is very difficult to separate the wheat from the chaff here," and that he felt there was a "psychogenic overlay" to Plaintiff's condition, which stymied the exam in places and made it more difficult to determine her exact signs and symptoms (tr. 209). The ALJ also cited to Dr. Navarro's reports (another referral from Dr. Kayes) which indicated that Plaintiff's pain was "out of proportion to physical findings" (Tr. 293).

Based on the above, the Court finds that, overall, the ALJ conducted a relatively thorough credibility analysis and that substantial evidence supports his credibility assessment.

## V. **DECISION**

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is not supported by substantial evidence. Accordingly, the Court recommends the decision of the Commissioner be REVERSED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this Report and Recommendation.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: October 13, 2009.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).